## ESSEX COUNTY.

### ISAAC FLETCHER *vs.* BOSTON AND MAINE RAILROAD.

In a suit against a railroad company for personal injury from a collision, the defendants' station agent being called as a witness by the defendants, and being inquired of on crossexamination whether he ever asked the plaintiff, or the plaintiff's partner, for a bill of the
damage done, or ever obtained more than one bill thereof, or ever said that a certain clerk
of the defendants who was on the train which caused the collision was going away and that
he wished to take the amount of the bill out of the clerk's wages, and that the clerk was
careless, no authority being proved in the agent to do or say these things: *Held,* that
these matters were collateral, and that the answers of the witness could not be contradicted by other evidence.

A railroad company is responsible for an injury occasioned by want of proper care and
prudence on the part of its servants in the management of a train which is under their
exclusive care, direction and control, although the train belongs to another company.   `

But if such injury is occasioned by the negligence of another railroad company, whose car,
for the purpose of being loaded by the plaintiff, has been placed upon a side track of the
defendants which is in constant use by other roads, such other company is bound to use
reasonable care to prevent a collision; and if it fails to do so, and the plaintiff receives
an injury from a collision while engaged in loading the car, he cannot recover against the
company whose cars caused the collision.

If such injury results from the negligence of another railroad company which has a joint
right with the defendants to use the defendants' track, under a lease from the defendants,
and which is accordingly running trains over the defendants' road on its own account,
the defendants are not responsible.

" Ordinary care " has relation to the situation of the parties and the business in which they
are engaged, and varies according to the exigencies which require vigilance and attention, conforming in amount and degree to the particular circumstances under which it is
to be exerted.

TORT for an injury occasioned by a train of the defendants
being driven violently against a freight car which the plaintiff
was loading, and which was standing upon the Methuen Branch
Railroad in Lawrence, said Methuen Branch Railroad being
owned by the defendants. At the trial in this court, before
*Dewey,* J., it appeared that the terminus of the Essex Railroad
was about two miles from the defendants' depot in Lawrence,
and that the Essex Railroad cars were permitted to run into
Lawrence over the defendants' track, and that the plaintiff, having occasion to send some freight over the Essex Railroad,
applied to the agent of that company in Lawrence to transport
the same, and was informed that the company had but one car

which he could have, which was then in the plaintiff's yard, at the north end of the station ground, where it had been carried upon a track known as the "east side track." Application was then made by the agent of the Essex Company at the defendants' freight office to see if some other cars then standing upon the "east side track" could be removed, to allow that car to be taken over this track down to the depot. The nature of the application, what was said at the time, and the person applied to at the freight office, were in dispute between the parties. The car, however, which was a close car, was placed there; and while the plaintiff was engaged in loading it, and was inside of the same, and out of sight of any person upon the approaching train, a train was backed upon the track and came into collision with the car which the plaintiff was loading, thereby causing the injury complained of. There was no evidence introduced by the plaintiff of any particular provisions made either by the Essex Company or by himself to guard against an accident.

There was evidence that upon the station ground at Lawrence there were, at the time of the accident, eight or ten different tracks diverging from the main tracks, and that such diverging or side tracks were used for the various purposes connected with the running of the various roads leading to that point; and the defendants contended that the collision occurred upon a track leased to the Concord Railroad Company, and was caused by the movement of a train of cars which did not belong to the defendants, and over which they had no control, and which was rightfully passing upon the "east side track," with due care in its management; and the defendants introduced a written contract between the Concord Railroad Company and themselves, regulating the joint running of their cars and the use of the rail-roads, and leasing to the former the Methuen Branch Railroad, together with the joint use of the side tracks for various purposes therein expressed. Said agreement also contained the following clause: "*Thirteenth.* It is further agreed that the party of the first part (*i. e.* the Concord Railroad Company) *shall deliver its down freight at Lawrence on side tracks*, provided as aforesaid,

conveniently arranged for delivery; and that the party of the second part is to receive such freight, do the necessary shifting and arranging cars, whether the same contain joint or local freight or freight for connecting roads," &c.; and there was evidence tending to show that the collision was made by a train of the Concord Railroad Company, which was switched off and backed upon the " east side track," under the charge of the engineer and conductor of the train, and in the usual manner; and that it continued to be under the direction of its engineer and conductor until the collision, and that the defendants never assumed any authority over such trains until they were deposited upon the side tracks by their conductors. Some of the foregoing facts were testified to by Daniel Hardy, the station agent of the defendants at Lawrence.

The defendants objected that the plaintiff could not recover upon his declaration charging that the injury was done by the cars and engine of the defendants, there being no evidence that the defendants owned either the cars or engine which came into collision with the car in which the plaintiff was when the accident occurred; but the objection was overruled.

The defendants asked the court to instruct the jury as matter of law, that the Boston and Maine Railroad Company is not liable for any injury done upon this side track by a northern train until after the same has been set off by its owners and delivered to the Boston and Maine Railroad; that the plaintiff must be considered, at the time of the accident, as a servant, or in the position of a servant of the Essex Railroad Company; that the Essex Railroad Company was guilty of gross carelessness in placing the plaintiff in the situation he was in, unless it notified him that he must move the car off from the track in season to allow the northern train to be placed upon it; that if it did so notify him, then the plaintiff was guilty of gross carelessness by being on the track at the time of the accident; that if he has any claim, it is on the Essex Company; that if the conductors of the northern train were guilty of negligence, the owners of such train, and not the defendants, would be responsible to the plaintiff.

The defendants also asked as further instructions, that the Essex Railroad Company having elected to load its car upon the side track, which was in constant use by other roads, was bound to keep a look-out that no collision should take place in consequence thereof, and that the plaintiff must be considered in the situation of a servant of the Essex Company while loading the car, and bound to do all that it was required to do ; that if a collision took place without such look-out, or other proper provision by said Essex Company to prevent the same, it was through want of care on the part of the Essex Company and the plaintiff, and therefore he cannot recover in this action.

The court gave the following instructions to the jury : If the car of the Essex Railroad Company was placed on this side track by the permission of the defendants, as a favor to the station agent of the Essex Company, or to the plaintiff, who was about to load a car of the Essex Company to transport his merchandise on the Essex Road, and the defendants had no interest therein, but it was allowed by the agent of the defendants upon the request of the agent of the Essex Company, or of the plaintiff, the rule of law as to the liability would be this :

1. As to the defendants. The defendants are responsible for any injury occasioned by the acts of their servants which might cause such injury, if the same occurred through want of proper care and prudence on their part ; that if the train by which the injury was caused was in the care of the servants of the defendants, subject to their exclusive direction and control at the time of the accident, then it is immaterial who in fact were the owners of the engine and cars constituting said train.

2. As to the Essex Company. If the injury to the plaintiff resulted from the negligence of the agents of the Essex Company, the defendants are not responsible ; that if the Essex Company elected to place its car which was to be loaded by the plaintiff upon a side track which was in constant use by other roads, the Essex Company was bound to use reasonable care that no collision should take place in reference to such car, and that if the plaintiff received the injury while engaged in loading the car, and there was a want of proper care on the

part of the Essex Company, and in respect to the same, the plaintiff cannot recover.

3. If the injury resulted from the negligence of another railroad company which had a lease of the railroad, and which was running on its own account, and which, in connection with the defendants, made use of the tracks at this place under a privilege secured by the lease, then the defendants are not responsible in this action.

4. If the injury happened from want of ordinary care and prudence on the part of the plaintiff in his manner of using the privilege, as the plaintiff was bound to use ordinary care and diligence in the use of the car, and in avoiding a personal exposure to injury, then the plaintiff cannot maintain his action.

A question also arose at the trial as to the admissibility of certain evidence to contradict several matters testified to by the witness Hardy, in his cross-examination, respecting which the facts sufficiently appear in the opinion of the court.

The verdict was for the plaintiff, and the defendants alleged exceptions.

*T. Wentworth,* (*N. G. White* with him,) for the defendants, cited, to the point of plaintiff's negligence, *Roberts* v. *Great Western Railway Co.* 4 C. B. (N. S.) 506 ; *Dascomb* v. *Buffalo & State Line Railroad Co.* 27 Barb. 221; *Moore* v. *Central Railroad Co.* 4 Zabr. 268.

*N. W. Harmon,* for the plaintiff, cited, to the point of the contradiction of Hardy, *Tucker* v. *Welsh,* 17 Mass. 160; *Rice* v. *N. E. Mar. Ins. Co.* 4 Pick. 439 ; *Perkins* v. *Adams,* 5 Met. 44 ; *Gould* v. *Norfolk Lead Co.* 9 Cush. 338.

CHAPMAN, J. In this action the plaintiff alleges that while he was loading a certain freight car standing on the defendants' track in Lawrence, under the authority and by the direction of the defendants, he was injured by reason of a freight train of the defendants being violently driven against the car. Daniel Hardy, the station agent, was called by the defendants as a witness; and, on his cross-examination, testified that he never asked the plaintiff, or Gowan, the plaintiff's partner, for a bill of the damage done to the plaintiff; that he never obtained of the

plaintiff or his partner more than one bill; that he never said that Clark, who was a clerk in the defendants' freight office and was on the train that caused the collision, was going away and he wanted a bill of the damage as he wished to take the amount of it out of his wages, or make him pay it; that he had no recollection of more than one bill, or that he said to Gowan he would send a second bill to Boston; or that he said Clark was very careless. All this cross-examination related to matters not admissible in evidence, or pertinent to the case. There was no evidence tending to show that he had authority to ask for a bill of the damage, or to call on Clark for payment, or to make admissions as to Clark's carelessness. And if he had been an agent, with authority to manage this business, his admissions, not connected with his acts as agent, would be inadmissible.

It is well settled that when a witness is cross-examined as to collateral matters, his answers are conclusive and he cannot be contradicted. The authorities are numerous; and it is sufficient to refer to *Commonwealth* v. *Cain*, 14 Gray, 7, and the authorities there cited. Gowan's deposition was admitted to discredit Hardy. He deposed that Hardy did request him to make out a bill of the damage and hand it in, and he would send it to Boston to see if it would be allowed; also that he said Clark was very careless in the matter; also that he said Gowan had better go to Boston and see the parties there, and gave Gowan their names; also that Hardy afterwards called on him for another bill of the damages, as Clark was going away and he wanted him to pay it. This testimony, which we understand was admitted with much hesitation and doubt, appears on careful consideration to be inadmissible, for the reasons above stated; it could not fail to influence the jury, and therefore the verdict must be set aside and a new trial granted.

As a new trial must be had, it is proper to express an opinion upon some other points that have been argued.

1. The defendants contend that the court erred in ruling that it was immaterial to whom the train belonged. But taking the whole ruling together, it is clearly right. The ruling is, that " if

the train by which the injury was caused was in the care of the defendants' servants, subject to their exclusive direction and control at the time of the accident," then it is immaterial who in fact were the owners of the engine and cars constituting the train. This must be so; for if a wrong was done, it was by those who had the exclusive direction and control of the train at the time, and by no others.

2. The fourth instruction to the jury, as to the use of ordinary care, is objected to. It is contended that the plaintiff, being in a dangerous situation, should have used extraordinary care, and that the jury should have been instructed upon the evidence as matter of law that he did not use due care.

But the court are of opinion that the instruction was correct. Ordinary care is a term that has relation to the situation of parties and the business in which they are engaged. It is used here as synonymous with the term " reasonable care " as used by the courts in England. " Care and diligence should vary according to the exigencies which require vigilance and attention, conforming in amount and degree to the particular circumstances under which they are to be exerted." *Holly* v. *Boston Gas Light Co.* 8 Gray, 131.

There are cases where, there being no facts in dispute, ordinary care becomes a question of law; but this does not seem to be such a case. If the track where the plaintiff was loading his marble was one that was exclusively used for loading cars, then no care would seem to be required on his part to avoid collisions; but if it was one on which trains were deposited on their arrival, or used for shifting cars and making up trains, and if in doing such business it is customary and prudent to run a train against a car that happens to be standing on the track and push it out of the way, then ordinary care would require a person who should go into such a car thus exposed to be moved, and who should there engage in a business that would place him in danger if the car were moved, to make some reasonable provision for his safety, such as would be adapted to the circumstances. So far as the report states the case, it tends to show that the plaintiff exposed himself to danger

without using any precaution. But the evidence is not fully reported. Enough appears, however, to show that the question of ordinary care depends upon many facts of a complicated character, and that the question should be left to the jury under instructions. The court are of opinion that each of the four instructions given to the jury was correct.

*Exceptions sustained.*